HEALTHFUSE LLC,                                          Case No. 16-cv-560-pp

          Plaintiff,

   v.

CDH-DELNOR HEALTH SYSTEM,

          Defendant.

## ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (DKT. NO. 8), AND DISMISSING CASE

This case arises from a post-termination contract dispute between the plaintiff and the defendant. The plaintiff is a Wisconsin limited liability company that provides revenue cycle management services to health care systems and hospitals. The defendant is a not-for-profit Illinois corporation that provides health care services at locations in Illinois. Under two professional services contracts, the plaintiff agreed to perform revenue cycle management services for the defendant. After the parties' first contract had been replaced by the second, the defendant invoked its right to terminate without cause. The plaintiff claims that the defendant failed to make payments that became due upon termination.

The defendant has moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction) and 12(b)(2) (lack of personal jurisdiction). Dkt. No. 8. The court will deny the defendant's motion to dismiss for lack of subject-matter jurisdiction, because the plaintiff has

1

submitted evidence establishing diversity of citizenship between the parties. The court will grant the defendant's motion to dismiss for lack of personal jurisdiction; the court cannot exercise personal jurisdiction over the defendant consistent with due process, because the defendant lacks sufficient minimum contacts with Wisconsin.

## I.    ALLEGATIONS OF FACT[1]

The complaint alleges that plaintiff is a Wisconsin limited liability corporation that assists "health care systems and hospitals with managing their revenue cycle vendors to drive value by reducing vendor costs and increasing vendor recovery performance." Dkt. No. 1 at ¶¶1, 7. The plaintiff did not plead the identities and citizenships of its members in the complaint. In response to the defendant's motion to dismiss, however, it filed a declaration from Michael Zimmerman. Dkt. No. 13. Zimmerman declared that Healthfuse has two members—Nicholas Fricano and Zimmerman Ventures, LLC. Id. at 1. He declared that he is the sole member of Zimmerman Ventures, LLC; that he lives in Franklin, Wisconsin; and that Zimmerman Ventures, LLC was incorporated in Wisconsin and has its corporate offices in Milwaukee, Wisconsin. Id. at 1-2. The plaintiff also filed the declaration of Nicholas J. Fricano. Dkt. No. 14. Fricano—the second member of Healthfuse, as well as its president and chief executive officer—declared that he lives in Milwaukee, and previously lived in Whitefish Bay, Wisconsin. Id. at 1-2.

[1] The court draws these facts from the complaint, the attached exhibits, and the materials that the parties submitted in connection with the defendant's motion, resolving any disputes of fact in plaintiff's favor. Purdue Research Found. v. Sanofi–Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003).

2

The defendant is an Illinois not-for-profit corporation with its principal place of business located at 25 North Winfield Road, Winfield, Illinois. Dkt. No. 8-2 at ¶7. It provides health care services at locations in Illinois. Id. at ¶¶4, 7.

The plaintiff alleges that the parties entered into a Professional Services Agreement dated April 1, 2014, (the "First PSA") under which the plaintiff "agreed to provide revenue cycle vendor performance management services and revenue cycle support to the [defendant] and one or more of its affiliate corporations" for a three-year period. Dkt. No. 1 at ¶8. The defendant executed that contract after a meeting in DuPage County, Illinois. Dkt. No. 8-1 at ¶12. The First PSA contains a choice of law provision selecting Illinois law as the governing law. Dkt. No. 1-1, §9.6.

During the term of the First PSA, the plaintiff alleges that the defendant "asked to renegotiate the payment terms" of the contract. Dkt. No. 1 at ¶11. The plaintiff alleges that it agreed to adjust the payment terms "[a]s a business courtesy to its new client," and the parties entered a second Professional Services Agreement dated July 1, 2014, (the "Second PSA"). Id. at ¶12. The defendant executed the Second PSA contract in St. Charles, Illinois. Dkt. No. 8-1 at ¶13. The plaintiff alleges that, "[b]y its terms, the Second Agreement replaced the First Agreement." Dkt. No. 1 at ¶12. Like the First PSA, the Second PSA is governed by Illinois law. Dkt. No. 1-2, §9.6.

The plaintiff alleges that on July 13, 2015, during the term of the Second PSA, the defendant notified the plaintiff of its decision to terminate the Second PSA without cause effective August 14, 2015. Dkt. No. 1 at ¶16. According to

3

the plaintiff, the defendant breached the payment terms of both the First PSA and Second PSA by failing to pay "all earned but unpaid" amounts within thirty days of the defendant's termination of the Second PSA. Id. at ¶¶17-20. The plaintiff pleaded four causes of action: breach of contract as to the First PSA (Count I, dkt. no. 1 at 5); breach of contract as to the Second PSA (Count II, dkt. no. 1 at 5), *quantum meruit* (Count III, dkt. no. 1 at 6); and unjust enrichment (Count IV, dkt. no. 1 at 7).

On the date the plaintiff filed the complaint (May 6, 2016), the defendant:

\* "was not engaged in conducting or transacting any business or performing any services at any location" in Wisconsin (Dkt. No. 8-2 at ¶8(a));

\* "was not authorized, licensed or registered by or with any authority within" Wisconsin "to conduct or transact any business or to perform any services there" (Id. at ¶8(b));

\* "did not own, operate, lease, occupy or maintain any office, facility, or other real property" in Wisconsin (Id. at ¶8(c));

\* "did not employ any employees" in Wisconsin (Id. at ¶8(d)):

\* "had no designated, appointed or registered agent or office for accepting service of process" in Wisconsin (Id. at ¶8(e));

\* "was under no obligation to pay, or withhold any taxes payable, to the State of Wisconsin or to any of its political subdivisions" (Id. at ¶8(f)):

\* "had no operational accounts with any bank or other financial institution located" in Wisconsin (Id. at ¶8(g)); and

4

*        "did not have or maintain any post office box or other address for
mailing" in Wisconsin, "or any telephone listing with a prefix assigned to any
territory" in Wisconsin (Id. at ¶8(h)).

The defendant has not sought, or threatened to seek, relief in any
Wisconsin court relating to its dispute with the plaintiff. Id. at ¶14.

## II.    DISCUSSION

### A.    Subject Matter Jurisdiction

The plaintiff alleges that this court has subject matter jurisdiction under
28 U.S.C. 1332(a)(1), the federal diversity statute, because the parties are
citizens of different states and the amount in controversy exceeds $75,000.
Dkt. No. 1 at ¶3. The defendant's motion to dismiss states that under Fed. R.
Civ. P. 8(a)(1), and Civil Local Rule 8, the plaintiff—an LLC—was required to
plead in the complaint sufficient facts to identify the citizenship of each of its
members. Dkt. No. 8 at ¶1. Because the complaint did not identify the
citizenship of each of the plaintiff's members, the motion asserts that the
complaint is "jurisdictionally defective on its face," and argues that the court
should dismiss the complaint under Rule 12(b)(1). Dkt. No. 9 at 2.

"For diversity jurisdiction purposes, the citizenship of an LLC is the
citizenship of each of its members." Thomas v. Guardsmark, LLC, 487 F.3d
531, 534 (7th Cir. 2007). Fed. R. Civ. P. 8(a)(1) requires all pleadings to contain
"a short and plain statement of the grounds for the court's jurisdiction . . . ."
Civil L. R. 8 of the Eastern District states, in pertinent part, "If a party is an

Case 2:16-cv-00560-PP   Filed 03/08/17   Page 5 of 17   Document 16

unincorporated association, limited liability company, or partnership, the pleading or notice must identify the citizenship of all members."

In response to the defendant's motion, the plaintiff submitted declarations establishing that the plaintiff is a Wisconsin citizen because both of its members are Wisconsin citizens, making the plaintiff fully diverse as to the Illinois defendant. Dkt. Nos. 13-14. Notwithstanding the evidence showing that the plaintiff is a Wisconsin citizen, the defendant contends that the court still may properly dismiss the complaint for lack of subject-matter jurisdiction, because "it is axiomatic that a complaint cannot be amended by the brief filed in opposition to a motion to dismiss, or by the affidavits which accompany that brief." Dkt. No. 15 at 3. (Citations omitted).

The court rejects this argument. The defendant acknowledges that the plaintiff could file a motion seeking leave to amend the complaint under Fed. R. Civ. P. 15(a)(2). Id. That rule encourages courts to "freely give leave when justice so requires." The Seventh Circuit has allowed LLCs to clarify the citizenship of their members as late as the appellate briefing stage. See Camico Mut. Ins. Co. v. Citizens Bank, 474 F.3d 989, 992 (7th Cir. 2007).

The court finds the plaintiff's supplemental filings regarding the membership of its members sufficient to establish subject-matter jurisdiction, and will not dismiss the case on that ground.

B.    Personal Jurisdiction

The court now turns to the question of whether it can exercise personal jurisdiction over the defendant. The plaintiff bears the burden of establishing

6

personal jurisdiction. See Purdue Research Found. v. Sanofi–Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). Personal jurisdiction may be either specific or general. A court has general jurisdiction over a defendant when the defendant can be considered "essentially at home in the forum State," but the case itself does not arise out of a defendant's contacts with the state. Daimler AG v. Bauman, ___ U.S. ___, 134 S. Ct. 746, 751 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). A court has specific jurisdiction over a defendant when a lawsuit "arise[s] out of" or is "related to" the defendant's minimum contacts with the forum state. Hyatt Int'l Corp. v. Coco, 302 F.3d 706, 716 (7th Cir. 2002). The minimum contacts requirement ensures that personal jurisdiction is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue," and that "the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." Purdue Research Found., 338 F.3d at 780. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." Id.

The plaintiff does not contend that the defendant has continuous and systematic contacts with Wisconsin that would support general jurisdiction. Dkt. No. 11 at 15. Instead, it argues that the court has "specific personal jurisdiction" over the defendant. Id. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Bauman, 134 S.

Ct. at 753 (citing Fed. R. Civ. Proc. 4(k)(1)(A)). "A federal district court exercising diversity jurisdiction has personal jurisdiction over a nonresident only if a court of the state in which it sits would have such jurisdiction." <u>Steel Warehouse of Wis., Inc. v. Leach,</u> 154 F.3d 712, 714 (7th Cir. 1998), as amended (Oct. 13, 1998).

Wisconsin courts employ a two-step inquiry when determining whether a court has personal jurisdiction over a nonresident defendant. First, the court determines whether any of the criteria for personal jurisdiction under Wisconsin's long-arm statute are satisfied. <u>U.S. Venture Inc. v. McCormick Transp. LLC</u>, No. 15-cv-990, 2015 WL 6694031, * 2-3 (E.D. Wis. Nov. 3, 2015) (citations omitted). If the requirements of the long-arm statute are satisfied, the court then must consider whether the exercise of jurisdiction over the defendant is consistent with due process. <u>Id.</u> "[B]ecause Wisconsin presumes its long-arm statute merely codifies the federal due process requirements . . . the burden switches to [the defendant] to show that jurisdiction would nonetheless violate due process." <u>Total Admin. Servs. Corp. v. Pipe Fitters Union Local No. 120 Ins. Fund</u>, 131 F. Supp. 3d 841, 844 (W.D. Wis. 2015) (quoting <u>Logan Prods., Inc. v. Optibase, Inc.</u>, 103 F.3d 49, 52 (7th Cir. 1996)).

There are three requirements for specific jurisdiction in a breach of contract case: (1) the defendant must have purposefully availed itself of the privilege of conducting business in Wisconsin; (2) the plaintiff's alleged injury must have arisen from the defendant's forum-related activities; and (3) the

exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. <u>Felland v. Clifton,</u> 682 F.3d 665, 673-74 (7th Cir. 2012).

### 1. *Wisconsin's Long–Arm Statute*

Under Wis. Stat. §801.05(5), Wisconsin courts may exercise personal jurisdiction in any action that "[a]rises out of a promise, made anywhere to the plaintiff . . . by the defendant . . . to pay for services to be performed in this state by the plaintiff," Wis. Stat. §801.05(5)(a), or that "[a]rises out of . . . services actually performed for the defendant by the plaintiff within this state . . . ." Wis. Stat. §801.05(5)(b). The following minimum contacts must exist before a defendant is subject to jurisdiction under these provisions:

> (i) a claim arising out of a bargaining arrangement made with the defendant by or on behalf of the plaintiff; (ii) a promise or other act of the defendant, made or performed anywhere, which evidences the bargaining arrangement sued upon; and (iii) a showing that the arrangement itself involves or contemplates some substantial connection with the state.

<u>Capitol Fixture & Woodworking Grp. v. Woodma Distrib., Inc.</u>, 147 Wis. 2d 157, 161-62, 432 N.W.2d 647, 650 (Ct. App. 1988).

The defendant does not contest that the plaintiff has satisfied the "literal test" of Wis. Stat. §801.05(5). Dkt. No. 15 at 4. The court agrees that this case falls within the scope of Wis. Stat. §801.05(5)(a), because it arises out of the defendant's alleged breaches of contract and failure to pay the defendant amounts the defendant claims to have earned under the First and Second PSAs for services performed for the defendant by the plaintiff in Wisconsin.

9

2. *Due Process*

Once the plaintiff has met the requirements of the long-arm statute, the court must determine whether the exercise of jurisdiction over each defendant comports with due process. Personal jurisdiction will not exist if the facts do not establish that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" under the due process clause of the Fourteenth Amendment. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). A state cannot force a nonresident to litigate in its courts unless there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law." Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 109 (1987) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

The first step of the due process inquiry is whether each defendant "purposefully established minimum contacts in the forum State." Burger King v. Rudzewicz, 471 U.S. 462, 474 (1985). If a defendant has sufficient minimum contacts with the state, the court then considers those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " Id. at 476 (quoting Int'l Shoe, 326 U.S. at 320 (1945)). The crucial inquiry is whether a defendant's contacts with the state are such that the defendant should reasonably anticipate being haled into court, because it has "purposefully availed itself" of the privilege of

10

conducting activities in the forum state, invoking the benefits and protections of the state's laws. Int'l Med. Group, Inc. v. Am. Arbitration Assoc., Inc., 312 F.3d 833, 846 (7th Cir. 2002) (citing Burger King, 471 U.S. at 474). In Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co., 18 F.3d 389 (7th Cir. 1994), the Seventh Circuit applied the five-factor test articulated by the Wisconsin Supreme Court for evaluating whether an assertion of personal jurisdiction violates due process: "(1) the quantity of the contacts with the state, (2) the nature and quality of the contacts, (3) the source of the cause of action, (4) the interest of Wisconsin in the action, and (5) the convenience of the parties in trying the matter in Wisconsin." Id. at 395.

Under the test articulated in Federated, the court concludes that exercising personal jurisdiction over defendant CDH-Delnor does not comport with due process. The defendant's contacts with Wisconsin are not of the nature and quality that would warn the defendant it could be required to defend an action in this state. According to the complaint (and the briefs and exhibits filed in connection with the defendant's motion to dismiss), the contacts the plaintiff had with the defendant in Wisconsin were: telephone calls placed to or from the plaintiff's office, emails sent to and from the plaintiff's Wisconsin employees, and payments the defendant sent to Wisconsin related to the services provided by the plaintiff.

The contractual negotiations between the plaintiff and the defendant began when one of the plaintiff's employees—who presumably was located in the plaintiff's Wisconsin office—placed a telephone call to Lisa Edler, the

defendant's Revenue Cycle System Manager—who was located in one of the defendant's Illinois offices. Dkt. No. 8-1 at ¶9; Dkt. No. 14 at ¶14.[2] Though not dispositive, "[t]he question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction." N. Grain Mktg., LLC v. Greving, 743 F.3d 487, 493 (quoting Madison Consulting Grp. v. South Carolina, 752 F.2d 1193, 1202 (7th Cir. 1985)). After that initial contact, the parties continued to discuss a potential contract by telephone, until a time when the defendant provided a conference room at one of its Illinois offices for the parties to have an in-person meeting. Dkt. No. 8-1 at ¶¶10-11. The plaintiff's representatives traveled to the defendant's Illinois office from Wisconsin to attend that meeting. Id. at ¶11. The parties held several other meetings, all of which occurred at the defendant's offices in Illinois. Id.

The evidence shows that the defendant signed both contracts in Illinois. Id. at ¶¶12-13. The defendant never traveled to Wisconsin in connection with the negotiation, execution, or performance of the contract. Dkt. No. 8-2 at ¶12. The plaintiff has submitted no evidence that defendants made any visits to Wisconsin in connection with the parties' contractual relationship. There is no

---

[2] The plaintiff argues that it was the defendant who initiated the contract negotiations. Dkt. No. 11 at 18. The plaintiff concedes that the plaintiff made the first *contact* in January 2013, but argues that the parties did not conduct negotiations that produced results until late 2013, when the plaintiff claims "it was CDH who reached out to contact and engage Healthfuse." Id. This argument asks the court to try to figure out when "contacts" turned into "successful contract negotiations"—an almost impossible task, even for the parties. No case supports a "first contact" test that requires a court to sort through a series of contacts to determine which party initiated the contact that ended up being the successful one.

evidence that any of the defendant's communications with the plaintiff regarding the contracts originated from any state other than Illinois. Dkt. No. 8-2 at ¶13. At most, the evidence shows that the parties anticipated that defendant would send payments to plaintiff's Wisconsin office, and would contact the plaintiff in Wisconsin by email and telephone. In addition, the parties expressly selected Illinois law to govern their contracts—a factor which, although not dispositive, courts have considered in assessing a defendant's minimum contacts with the forum state. E.g., Burger King, 471 U.S. at 482 (a choice-of-law provision in a contract is not sufficient in itself to confer personal jurisdiction); Cont'l Bank, N.A. v. Everett, 964 F.2d 701, 703 (7th Cir. 1992) (concluding personal jurisdiction was consistent with the due process clause because, among other things, "the guarantors agreed that Illinois law would govern"); O'Hare Int'l Bank v. Hampton, 437 F.3d 1173, 1177 (7th Cir. 1971) ("the fact that the guaranty was to be construed according to Illinois law and performed in that state clearly demonstrates that the defendants invoked the benefits and protection of the state.") (internal quotation marks omitted).

The plaintiff argues that the defendant sent information related to the contracts to the plaintiff in Wisconsin, dkt. no. 11 at 19, and knew that the plaintiff would perform its obligations in Wisconsin, id. at 18. The court finds that this is not enough to confer personal jurisdiction. The Seventh Circuit has held, with respect to contract disputes, that "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." Purdue Res. Found., 338 F.3d at 781 (citing Burger

13

King, 471 U.S. at 478). The panel in Federated reasoned that a contract anticipating no more than contacts by telephone and mail, and payments made to the state, likely is not sufficient to establish sufficient minimum contacts. Federated, 18 F.3d at 395. In Lakeside Bridge & Steel Co. v. Mountain State Const. Co., 597 F.2d 596 (7th Cir. 1979), the Seventh Circuit held that telephone and mail contacts alone are not enough to satisfy jurisdictional requirements—otherwise "(u)se of the interstate telephone and mail service to communicate with (an out-of-state) plaintiff, if constituting contacts supporting jurisdiction, would give jurisdiction to any state into which communications were directed." Id. at 604.

The Seventh Circuit explained in Northern Grain that Lakeside "mark[s] something of a borderline for a finding of no personal jurisdiction: '[W]hen a defendant's contacts with the forum state have been as—if not more—limited than those of the defendant in Lakeside, this court has denied personal jurisdiction.'" Northern Grain Mktg., 743 F.3d at 494 (quoting Madison Consulting Grp., 752 F.2d at 1200). Contrast Daniel J. Hartwig Assoc., Inc. v. Kanner, 913 F.2d 1213 (7th Cir. 1990), in which the court found that personal jurisdiction existed under Wis. Stat. §801.05(5) because the defendant had initiated contact with the plaintiff, solicited its services "on a number of occasions," had business connections with other Wisconsin residents, and the plaintiff had performed a substantial amount of the contract in Wisconsin. Id. at 1218-19. The court found personal jurisdiction in Daniel J. Hartwig, because there was more than telephone and mail contacts and the parties'

14

knowledge that someday the defendant would perform contractual obligations in Wisconsin.

Considering the parties' negotiations, the contemplated future consequences under the contracts, the terms of the contracts, and the parties' actual course of dealing, the court determines that the contacts here are of the limited type the court described in <u>Lakeside</u>. The court bases this conclusion on three significant factors: the plaintiff solicited the defendant's business, the defendant never physically entered Wisconsin, and the parties agreed that Illinois law would govern their contractual relationship.

First, the plaintiff initiated the parties' negotiations by contacting the defendant in Illinois, which had no prior relationship with the plaintiff. Dkt. Nos. 8-1 at ¶9; 14 at ¶14. The plaintiff argues that this case is "closely analogous to <u>Citadel Grp. Ltd. v. Washington Regional Medical Center</u>, 536, F.3d 757 (7th Cir. 2008)." Dkt. No. 11 at 21. The court agrees that this case and <u>Citadel</u> share some similarities (as do many cases involving personal jurisdiction in contract cases), but the cases differ in a meaningful way: in <u>Citadel</u> (and <u>Hartwig</u>), the *defendant* initiated the contacts; here, the *plaintiff* initiated the negotiations that led to the formation of the contracts. <u>Citadel Grp.</u>, 536 F.3d at 759; <u>Hartwig</u>, 913 F.2d at 1218. Attempting to neutralize this factor, the plaintiff contends that the court should find that the defendant "reached out to contact and engage" the plaintiff because several months had passed between April 2013, when the parties temporarily stopped negotiating, and late 2013, when the defendant contacted the plaintiff to resume the

15

negotiations. Dkt. No. 11 at 7. That break in negotiations is not determinative. After the plaintiff solicited the defendant's business in January 2013, the parties actively engaged in negotiations until April 2013, either by telephone or in person in Illinois. Based on the level of engagement that the record shows occurred during those months, the court finds that the plaintiff initiated negotiations; the defendant *resumed* them later.

Second, no representative of the defendant ever physically entered Wisconsin in connection with the contracts—neither in relation to the negotiation, the execution, or the performance of the contracts. Although the plaintiff, in performing its obligations under the contracts, did things like sending data to the plaintiff in Wisconsin, and conducting telephonic meetings, these telephone and email contacts to the plaintiff in Wisconsin are insufficient to establish that defendant purposefully availed itself of the privilege of conducting business in Wisconsin. Had the defendant made physical visits to Wisconsin in connection with the contracts, the court might reach a different conclusion. But it did not, and the plaintiff fulfilled its contractual obligations to assist the defendant's exclusively non-Wisconsin operations.

Third, both contracts contain an express choice-of-law provision selecting Illinois law as governing the agreements. Dkt. Nos. 1-1, §9.6; 1-2, §9.6.

Because the plaintiff initiated the parties' negotiations, the defendant never physically entered Wisconsin in connection with the contracts, and the parties agreed that Illinois law would govern disputes arising under the

contract, the court finds that it cannot exercise personal jurisdiction over the defendant. The court will grant the defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

## III.    CONCLUSION

For the foregoing reasons, the court **GRANTS** the defendant's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. Dkt. No. 8. The court **ORDERS** that the complaint, and this case, are **DISMISSED** without prejudice.

Dated in Milwaukee, Wisconsin this 8th day of March, 2017.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**